| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:17-CR-144 |
| § | |
| RICHARD DAVID SHOCK § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Richard David Shock's ("Shock") *pro se* Motion for Compassionate Release (#38), wherein he contends that "extraordinary and compelling reasons . . . exist" warranting his release from confinement "due to the continued existence of . . . COVID-19 and its variants within the institutional system." The Government filed a response in opposition (#40). In addition, United States Probation and Pretrial Services ("Probation") conducted an investigation and recommends that the court deny Shock's motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.  Background

On April 10, 2018, Shock pleaded guilty to Count One of a three-count Indictment charging him with Possession with Intent to Distribute a Controlled Substance (Methamphetamine), in violation of 21 U.S.C. § 841(a)(1).[1] On August 13, 2018, the court sentenced Shock to 115 months' imprisonment, to be followed by a four-year term of supervised release. The remaining counts were dismissed on the Government's motion. At the time Shock filed the motion, he was housed at Federal Correctional Institution Forrest City Low ("FCI Forrest

---

[1] Count Two charged Shock with Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1), and Count Three charged him with Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d).

City"), located in Forrest City, Arkansas. He is now housed in a Residential Reentry Center in Dallas, Texas, and his projected release date is February 25, 2024.

II.     Appointment of Counsel

Shock requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c). There is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, 586 U.S. ___, 139 S. Ct. 738, 749 (2019); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (declining to recognize a constitutional or statutory right to assistance of counsel in bringing a § 3582(c)(2) motion for sentence reduction), *cert. denied*, 583 U.S. 1159 (2018). Thus, there is no right to appointed counsel in § 3582(c) proceedings. *Finley*, 481 U.S. at 555; *United States v. Diaz*, No. 22-40044, 2023 WL 1879404, at *3 (5th Cir. Feb. 10, 2023); *Whitaker*, 862 F.3d at 501; *see United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings").

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief. *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *see also United States v. Moore*, 400 F. App'x 851, 852 (5th Cir. 2010); *United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010). The United States Court of Appeals for the Fifth Circuit has stated, however, that "'the interest of justice [does] not require the appointment of counsel' when a motion does 'not involve complicated or unresolved

2

issues.'" *United States v. Walker*, No. CR 17-160, 2020 WL 6708385, at *2 (E.D. La. Nov. 16, 2020) (quoting *Moore*, 400 F. App'x at 852); *United States v. Delco*, No. CR 09-57, 2020 WL 4569670, at *2 (E.D. La. Aug. 7, 2020).

Here, the interest of justice does not require the appointment of counsel to assist Shock in seeking compassionate release under 18 U.S.C. § 3582. *See Moore*, 400 F. App'x at 852; *Walker*, 2020 WL 6708385, at *2; *Whitebird*, 55 F.3d at 1010-11. Other than contending that "efficiency," with respect to the pending motion, "would be greatly enhanced [by] the appointment of counsel," Shock provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. CR 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In this situation, he has failed to raise any complicated or unresolved issues that could arguably justify the appointment of post-conviction counsel. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing appointment of counsel under certain circumstances when "the court determines that the interests of justice so require"). Accordingly, Shock's motion for appointment of counsel is denied.

III.   Compassionate Release

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). Commonly referred to as "compassionate release," § 3582(c)(1)(A) is a rare exception to a

conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[2] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. §

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission had issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13.(b). These categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles. The defendant must have exhausted his administrative remedies;

"extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii); the reduction must be consistent with the Commission's applicable policy statement; and the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors. *See Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022).

### A.   Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"), *cert. denied*, 141 S. Ct. 920 (2020). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020)

(defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020))).

Here, it is unclear whether Shock has exhausted his administrative remedies. Shock, along with his motion, submitted an email dated July 25, 2022, evidencing that he submitted a request to the warden of the facility where he was housed, which reads, in part: "Warden Yates , I would like to be considered for the Cares act and/or compassionate release. I am requesting home confinement." As an initial matter, the BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir.) ("The [BOP] has the sole authority to designate a prisoner's place of incarceration."), *cert. denied*, 141 S. Ct. 926 (2020). In addition, there is no indication that the warden actually replied to Shock's email. Because he filed his motion months after submitting his request to the warden, Shock ostensibly relies on the warden's silence and the passage of 30 days to satisfy the statutory requirements for exhaustion. Notwithstanding Shock's submission, the Government contends that he "has not satisfied the administrative exhaustion requirement" because "neither BOP nor FCI Forrest City . . . ha[s] any record that [Shock] has submitted such a request." The Government does not, however, sufficiently explain or refute the email that Shock attached to his motion. At any rate, assuming Shock properly exhausted his administrative remedies, nothing in the motion indicates that extraordinary and compelling reasons exist to modify his term of imprisonment.

B.   Criteria for Release

Shock asserts that, due to his Chronic Obstructive Pulmonary Disease ("COPD") and asthma, exposure to COVID-19 while in an "uncontrollable environment such as the [BOP]" would place him in "peril." As a result, Shock's complaint is properly analyzed under U.S.S.G. § 1B1.13(b)(1)(D). Section 1B1.13(b)(1)(D) states that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstances:

(i)   the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)  due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

Importantly, "generalized concerns about COVID-19 cannot be deemed an 'extraordinary and compelling reason' for compassionate release under [§] 1B1.13." *United States v. Stehley*, No. 3:16-CR-14, 2023 WL 8014078, at *7 (W.D. Pa. Nov. 9, 2023); *see United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022) ("[A] generalized fear of COVID-19 does not automatically entitle a prisoner to release." (citing *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir.), *cert. denied*, 141 S. Ct. 2688 (2021))). Rather, § 1B1.13(b)(1)(D) is concerned with "an 'ongoing outbreak of infectious disease' at a 'correctional facility'" that, due to a defendant's "personal health risk factors and custodial status," "place[s] the defendant at 'increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak.'"

8

*Id*. (quoting U.S.S.G. § 1B1.13(b)(1)(D)(i), (ii)). Accordingly, Shock must satisfy each of § 1B1.13(b)(1)(D)'s three prongs for his particular circumstances to qualify as "extraordinary and compelling." *See* U.S.S.G. § 1B1.13(b)(1)(D)(i)-(iii).

First, Shock has failed to show that FCI Forrest City is affected with an ongoing COVID-19 outbreak warranting compassionate release. *See United States v. Babbitt*, No. 13-CR-10100, 2023 WL 7154102, at *3 (C.D. Ill. Oct. 31, 2023); *see also Stehley*, 2023 WL 8014078, at *7. The figures available at www.bop.gov[3] list no inmates (out of a total inmate population of 1,804) at FCI Forrest City as having confirmed positive cases of COVID-19.[4] Hence, FCI Forrest City is not experiencing a "high-outbreak level" and, thus, does not appear to be affected by an ongoing COVID-19 outbreak. *See Babbitt*, 2023 WL 7154102, at *3 (holding that a correctional facility was not "affected with an ongoing COVID-19 outbreak" where the facility was "listed as a low-risk Level 1 Operation"). Moreover, the federal COVID-19 public health emergency ended on May 11, 2023.

Next, as to Shock's "personal health risk factors and custodial status," Shock asserts that he suffers from COPD and asthma, placing him at increased risk of suffering severe complications or death as a result of contracting COVID-19. In this vein, according to the Centers for Disease Control and Prevention website, both of these underlying medical conditions make him more likely to become severely ill should he contract COVID-19. *COVID-19: Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION,

---

[3] *Inmate COVID-19 Data*, FED. BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp. (last updated Jan. 12, 2024).

[4] Further, although Shock contends that "the numbers" regarding COVID-19 statistics "are not properly reported to the CDC [sic] for concealment" of FCI Forrest City's "issues" with respect to managing COVID-19 in the facility, he fails to provide any support for this assertion.

https://www.cdc.gov/coronavirus/2019-ncov/hcp/ clinical-care/underlyingconditions.html (Feb. 9, 2023). Thus, were FCI Forrest City actually experiencing an ongoing outbreak of COVID-19, Shock could be "at increased risk of suffering severe medical complications or death as a result of exposure" to the virus. Further, while his medical records confirm that he has been diagnosed with COPD and asthma, Shock's medical conditions appear to be well-controlled by medication, having been prescribed Fluticasone/Salmeterol, a Mometasone Furoate Inhaler, and an Albuterol Inhaler to treat his asthma and COPD. Shock also has a history of smoking and, in February 2023, was disciplined for possessing tobacco—an activity that is plainly counterproductive to his health. Shock is classified as a BOP Medical Care Level 2 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 2 inmates "are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."

In any event, although Shock might be at increased risk of adverse consequences, he cannot show that "such risk cannot be adequately mitigated in a timely manner." Indeed, according to Shock's BOP medical records, he received the Janssen vaccine on June 22, 2021, after initially refusing to be vaccinated. Prior to the effective date of the amended Guidelines, courts consistently held that, "once vaccinated, the efficacy of the COVID-19 vaccines preclude[d] the argument that a prisoner's susceptibility to the disease [was] extraordinary and compelling." *See, e.g.*, *United States v. Gibson*, No. 14-86, 2021 WL 3164176, at *2 (E.D. La. July 27, 2021); *United States v. Walker*, No. 20-cr-20027, 2021 WL 2474088, at *3 (C.D. Ill. June 17, 2021)

10

(holding that because defendant was fully vaccinated, his underlying health conditions—diabetes, heart disease, high blood pressure, asthma, and substance abuse—alone, were insufficient to establish extraordinary and compelling reasons justifying compassionate release); *United States v. Parham*, No. 1:19-CR-133-LG-RHW-1, 2021 WL 1911899, at *2 (S.D. Miss. May 12, 2021) (finding that "generalized concerns of contracting COVID-19[ ] are not an 'extraordinary and compelling reason'" where the defendant had received the COVID-19 vaccine). In the wake of the amended Guidelines, the receipt and efficacy of COVID vaccines seems to speak directly to whether risk from the virus can "be adequately mitigated in a timely manner." *See Stehley*, 2023 WL 8014078, at *7 (applying the Guidelines as amended and noting that the fact that the defendant was "fully vaccinated against COVID-19 . . . may well mitigate his risk of severe illness from the virus."). Further, both before and after receiving the vaccine, Shock contracted and successfully recovered from the virus—indicating that the risk posed by the virus was mitigated in a timely manner.[5] Accordingly, Shock is also unable to satisfy § 1B1.13(b)(1)(D)'s third prong. Hence, Shock's concerns relating to COVID-19 in prison provide no basis for relief.

Furthermore, while Shock's request does not directly implicate U.S.S.G. § 1B1.13(b)(1)(A)-(C), his medical records clarify that none of these provisions would apply in his case. Shock contracted COVID-19 twice, once in 2020 and again in 2021, and, in each case,

---

[5] Prior to the amendment, courts also regularly denied COVID-19-based motions for compassionate release filed by inmates who had already contracted and recovered from the virus. *See*, *e.g.*, *United States v. Gipson*, 829 F. App'x 780, 781 (9th Cir. 2020) (affirming denial of compassionate release for a defendant with preexisting conditions who had already contracted COVID); *United States v. Stockman*, No. H-17-116-2, 2020 WL 5269756, at *3 (S.D. Tex. Aug. 26, 2020) (noting that when an inmate is infected and recovers from COVID-19, the courts have found the risks of infection or severe symptoms or effects because of underlying conditions change and diminish); *United States v. Baker*, No. CR 16-179, 2020 WL 4584195, at *4 (E.D. La. Aug. 10, 2020) ("Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus.").

Shock was treated in his correctional facility and recovered relatively quickly. This further demonstrates that Shock is receiving adequate and timely medical care. In addition, his medical records further reveal that none of Shock's medical conditions are terminal, require specialized care, or substantially diminish his ability to provide self-care within the context of a correctional facility.

C. Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).

Shock's offense of conviction involved his possession with intent to distribute more than five grams of methamphetamine (actual). During the execution of a search warrant at his residence, officers found 21.4 grams of methamphetamine (actual) in his bedroom and a rifle with an obliterated serial number in his shed. Shock admitted that both the methamphetamine and the rifle were his. Moreover, Shock has an extensive criminal history, which includes prior convictions for possession of marijuana, theft of property, burglary of a building, unauthorized use of a motor vehicle, possession of a controlled substance, and possession of a prohibited

weapon. Shock also failed to comply with previous terms of probation. In addition, he has a history of poly-substance abuse—including the daily use of marijuana and methamphetamine.

Shock's earliest conviction, at age 27, was for the possession of marijuana, which was later followed by convictions for theft and burglary. Shock was placed on probation after his theft and burglary convictions—he, however, violated the terms of his probation in both instances. At age 30, Shock sustained another theft conviction. Once again, Shock was placed on probation, but he failed to comply with the terms of his probation (due to numerous technical violations). His criminal behavior continued into his mid-thirties, consisting of multiple convictions for the possession of various controlled substances and a conviction for the possession of a prohibited weapon (brass knuckles).

Compassionate release is discretionary, not mandatory, and may be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a). *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, and deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). Where, as here, a prisoner has engaged in "severe" criminal conduct and has an extensive criminal history, the district court has discretion to deny compassionate release under the circumstances. *Chambliss*, 948 F.3d at 693-94; *accord Rollins*, 53 F.4th at 358-60; *Gharib*, 2022 WL 1565352, at *1 (refusing to consider the defendant's contention that extraordinary and compelling reasons justified compassionate release due to the

defendant's no longer being subject to the career offender enhancement when the district court found that the § 3553(a) factors outweighed granting relief); *Keys*, 846 F. App'x at 276 (rejecting the defendant's argument that the court gave too much weight to his criminal history and finding that "a mere disagreement with the court's balancing of the § 3553(a) factors . . . is not a sufficient ground for reversal"). In view of the nature and circumstances of Shock's offense of conviction, his extensive criminal history, and his history of substance abuse, the court cannot conclude that his early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

IV.   Conclusion

In sum, Shock has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Indeed, the 115-month sentence of imprisonment imposed upon Shock for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this time. Accordingly, Shock's *pro se* Motion for Compassionate Release (#38) is DENIED.

SIGNED at Beaumont, Texas, this 22nd day of January, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE